# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| GEORGE VOEKS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1895 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| MESSERLI & KRAMER P.A. and MIDLAND FUNDING, LLC, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff George Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes.

5. Defendant Messerli & Kramer, PA ("Messerli") is a law firm with its principal place of business located at 100 S. 5th Street, 1400 Fifth Street Towers, Minneapolis, MN 55402-5540.

6. Messerli is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Messerli is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. Messerli is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

10. Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time Midland acquires them.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 371 (3d Cir. 2018) ("Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the liens prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th

Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 882-84 (N.D. Ill. 2018).

13. The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts. *See, e.g.*, *Trichell v. Midland Credit Mgmt.*, No. 18-cv-132, 2018 U.S. Dist. LEXIS 148700, at *6 (N.D. Al. Aug. 31, 2018) ("Defendants [MCM and Midland Funding] concede that they are debt collectors.").

14. Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

15. Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

16. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

17. Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland Funding is debt collection. *See, e.g., Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18. Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding. Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

19. Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed 875 small claims lawsuits against Wisconsin consumers in the month of December 2018 alone. When Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

20. Another court in the Northern District of Illinois recently found that there was no genuine dispute about whether Midland Funding was a "debt collector" under the FDCPA. *Valenta v. Midland Funding, LLC*, No. 17-cv-6609, 2019 U.S. Dist. LEXIS 53902, at *7 (N.D.

4

Ill. Mar. 29, 2019) ("MF has left no doubt that debt collection is its lifeblood, so the Court can only conclude that it is a 'debt collector' under the FDCPA.").

21. Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a. *Tepper*, 898 F.3d at 371; *Trichell*, 2018 U.S. Dist. LEXIS 148700, at *6.

22. A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company (such as MCM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice v. National Tax Funding L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

## FACTS

23. On or about January 16, 2019, Messerli mailed a debt collection letter to Plaintiff regarding this alleged debt owed to "Midland Funding, LLC ("Midland") as successor in interest to Synchrony Bank." A copy of this letter is attached to this complaint as Exhibit A.

24. Upon information and belief, the alleged debt reference in Exhibit A was incurred by use of a credit card, used only for personal, family, and household purposes.

25. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit A is a form debt collection letter used to attempt to collect alleged debts.

27. Upon information and belief, Exhibit A is the first written communication Messerli mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

5

28. Exhibit A includes the following representations which largely reflect the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing within thirty days after receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you. Also, upon your written request within 30 days after receipt of this letter, we will provide you with the name and address of the original creditor if different from the current creditor.

29. Exhibit A identifies the name of the creditor in a false, deceptive, misleading, and confusing manner.

30. The header in Exhibit A states:

> Date: January 16, 2019
> Our Client: Midland Funding LLC
> Original Creditor: Synchrony Bank
> Consumer: George Voeks
> Balance: $1,349.65
> Our File Number: ▮1901
> Account Number: XXXXXXXXXXXX5170

31. The body in Exhibit A states that Messerli "represents Midland Funding LLC as successor in interest to Synchrony Bank regarding the collection of the above balance."

32. The Seventh Circuit recently found that a debt collection letter stating that it was collecting a debt on behalf of "CLIENT: PAYPAL CREDIT" and "ORIGINAL CREDITOR: Comenity Capital Bank" clearly identified the current creditor as Comenity Capital Bank. *Smith v. Simm Assocs.*, App. Nos. 18-3350 and 19-1155, 2019 U.S. App. LEXIS 17072, at *2 (7th Cir. June 6, 2019).

33. The plaintiff in *Smith* argued that the unsophisticated consumer would be confused as to whether the debt was owed to the "original creditor" or the debt collector's "client." *Id.* at *5.

6

Case 2:19-cv-01895-PP   Filed 12/27/19   Page 6 of 14   Document 1

34. The Seventh Circuit found that the letter in *Smith* clearly identified the original creditor as the current creditor because it "identifie[d] a single 'creditor,' as well as the commercial name to which the debtors had been exposed, allowing the debtors to easily recognize the nature of the debt." *Id.*, at *6-7.

35. The Seventh Circuit explained that "even accurate technical terminology—'transfer' or 'assignee'—can be confusing to an unsophisticated consumer and can violate § 1692g(a)(2), which requires a debt collector to present information about the creditor and the debt in the manner the unsophisticated consumer can understand." *Id.* at *6.

36. At first glance, Exhibit A is similar to the letter in *Smith*, describing one entity as the "Client" and another entity as the "Original Creditor," except that, upon information and belief, the "original creditor" in this case has no interest in the debt's receivables because it has sold those receivables outright to Midland Funding.

37. As the Seventh Circuit explained in *Smith*, even if the statement that Midland Funding was "successor in interest" to Synchrony is technically accurate, it does not clarify Midland Funding's role in the eyes of the unsophisticated consumer, who would nonetheless wonder whether the debt was still owed to the only "creditor" identified in the letter. *Id.* at *7 ("Indeed, by informing debtors they could request the name of the original creditor *if different* from the current creditor, the letter alerts debtors the original and current creditor may be the same.").

38. Confusing and misleading representations about the name of the creditor are material misrepresentations because they create the potential for fraud or double-payments. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 324-25 (7th Cir. 2016); *Taylor v.*

7

*Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018).

39. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

40. Plaintiff read Exhibit A.

41. Plaintiff was confused and misled by Exhibit A.

42. The unsophisticated consumer would be confused and misled by Exhibit A.

43. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

*The FDCPA*

44.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the

FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. Misrepresentations of the character, amount or legal status of any debt and misrepresentations of the level of attorney involvement in an account, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

50. 15 U.S.C. § 1692g provides:

(a) **Notice of debt; contents** - Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
…
(2) the name of the creditor to whom the debt is owed;

## COUNT I - FDCPA

51. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

52. Exhibit A is not clear about the identity of the creditor to whom the debt is owed. It is unclear to the unsophisticated consumer whether Midland Funding or Synchrony or both was the current creditor to whom the debt was owed.

53. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

## CLASS ALLEGATIONS

54. Plaintiff brings this action on behalf of a class of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant Messerli in the form of Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) on behalf of Midland Funding, (e) between December 27, 2018 and December 27, 2019, inclusive, (f) and such letter was not returned by the postal service.

55. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

56. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violate the FDCPA.

57. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

58. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

59. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

60. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 27, 2019

              **ADEMI & O'REILLY, LLP**

         By: /s/ Mark A. Eldridge
             John D. Blythin (SBN 1046105)
             Mark A. Eldridge (SBN 1089944)
             Jesse Fruchter (SBN 1097673)
             Ben J. Slatky (SBN 1106892)
             3620 East Layton Avenue

13

<sub>Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com</sub>

14

<sub>Case 2:19-cv-01895-PP    Filed 12/27/19    Page 14 of 14    Document 1</sub>